FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 29 2020 ★
BROOKLYN OFFICE


RECEIVED
APR 2020
PRO SE OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

The United States Merchant Marine Academy

-against-

Noah Cavender

Complaint for a Civil Case

Case No. _____ CV-20 2063
*(to be filled in by the Clerk's Office)*

Jury Trial:   ☐ Yes   ☐ No
*(check one)*

**CHEN, J.**

**TISCIONE, M.J.**

## I. The Parties to This Complaint

### A. The Plaintiff(s)

| | |
|---|---|
| Name | Noah Cavender |
| Street Address | 303 Banbury Road |
| City and County | North Aurora, Kane County |
| State and Zip Code | Illinois, 60542 |
| Telephone Number | (630) 486-5217 |
| E-mail Address | cavendernoah@yahoo.com |

### B. The Defendant(s)

Defendant No. 1

| | |
|---|---|
| Name | The United States Merchant Marine Academy |
| Job or Title | Federal Service Academy |
| Street Address | 300 Steamboat Road |
| City and County | Kings Point, Nassau County |
| State and Zip Code | New York, 11024 |
| Telephone Number | (516) 726-5800 |

## III. Statement of Claim

The Plaintiff has been disenrolled from the United States Merchant Marine Academy through a procedurally flawed and incorrect process inconsistent with the Academy's own policies and procedures. This is preventing the Plaintiff, who is a third trimester senior, from completing his required courses and earning his degree.

## IV. Relief

The Plaintiff requests the court order the reinstatement of the Plaintiff as a Midshipman at the United States Merchant Marine Academy in order to return to the track of completing the intended degree program as planned prior to the Plaintiff's disenrollment.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.  **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: April 24, 2020

Signature of Plaintiff   *Noah Cavender* (signed)
Printed Name of Plaintiff  Noah Cavender

Sworn to before me this 24th day of April 2020

*Sabrina M White* (signed)
Notary Republic

"OFFICIAL SEAL"
Sabrina M White
Notary Public, State of Illinois
My Commission Expires May 12, 2023

I, Noah Cavender, swear that all of the following statements are true.

1. The Undersigned was notified on Thursday, December 19th via email that a formal report of an honor violation had been submitted to the honor board against him. He was asked to communicate a time that he was available to meet with the assigned investigating officer, Midshipman Wayne Witherow, in order to have an initial interview to ascertain the facts of the case. The undersigned had several tests the next day as well as class all day prior to his departure for winter break. Therefore, he informed the investigating officer that he was not available prior to break for an interview. During class, the undersigned began to think about all of the procedures and rights/rules that he was aware of regarding the process of an alleged honor violation. The Undersigned researched through the 2015 honor manual (Reference Attached Item A) that he was able to access on the United States Merchant Marine Academy's internal server, Intranet, in addition to his knowledge of the process that was most recently explained to the regiment of midshipmen. Upon conclusion of this research, the notification by email as opposed to in person was a violation of the clearly delineated process set out in the honor manual. Due to this realization, the undersigned began looking for information as to why the process was not being followed correctly. The honor board chairman, Midshipman Jake Erickson, came and spoke to the undersigned directly before departing for winter break in order to have him sign a form agreeing to delay all actions until the regiment returned from winter break leave in January. The undersigned agreed and signed the form due to his schedule being unavailable prior to break. During the same conversation, the undersigned brought up his concerns regarding the process and the honor manual. He was told that the honor board had been working on revising the old manual as well as creating an entirely new document to publish in the future. The undersigned informed Midshipman Erickson that he did not have access to the revised version which Midshipman Erickson stated was the 2017 version of the honor manual. The undersigned only had access online to the 2015 version. The honor board chairman told the undersigned that he would speak with the academy's honor advisor, Commander (CDR)Patrick Keane, and provide the most

current version and in-use version that will determine the process for the undersigned's case.

2. Upon the undersigned's return to the academy on January 5th, he heard nothing from any member of the honor board until Monday January 13th when he was again contacted by email to schedule an initial interview. Prior to this email the undersigned had still not received a copy of the most updated version of the honor manual so he went to several different faculty members including First Battalion Officer Lieutenant Commander (LCDR) John Jaeger, and the Academy's academic advisor CDR Paul Acquaro. The undersigned spoke with both of them on or before Wednesday the 8th of January and both only had access to the 2015 version of the honor manual via the Academy's intranet. CDR Acquaro provided a statement clarifying this fact (Reference Attached Item C). At this time, the undersigned had already been informed that the 2015 Honor manual was not the proper procedural guidelines to reference and yet was unable to locate nor was he provided with the proper regulations. Thursday, January 9th, the undersigned met with his selected advisor from the Academy upon his availability opening up. During the meeting, the undersigned's advisor, Lieutenant Commander John Curran, searched on the academy intranet in the same place that both the undersigned and the aforementioned Academy staff members found the 2015 honor manual. Instead of the 2015 manual it had now been replaced by the 2017 honor manual. The undersigned now gained access to the manual stated by Midshipman Jake Erickson to be the most current and up to date version. The undersigned went through the manual to make sure he understood the process and his rights and he realized that still many procedures were not being followed. For example, in addition to the aforementioned violation of proper notification for an alleged honor violation, the 2017 honor manual states that "The RHBVCI will schedule the Initial Investigation Interview within five days of the delivering of the Notification of the Accused" (Reference Honor Manual 2017 Chapter 3 Section 302A paragraph 2). The undersigned was not even contacted to set up an interview for 7 days following the return to the academy following the conclusion of winter leave. Once the undersigned was finally contacted, his advisor was out of the office for two days further delaying the process through no fault of the undersigned's own. Subsequently, the undersigned

contacted the Honor board chairman and asked for a clear and decisive statement as to what manual he should be looking to for guidance. The undersigned was informed through email on Tuesday January 14th, that the 2017 manual was the authoritative version and that regardless of any future potential changes none of them would be to the investigation process (Reference Item D). The very next day the undersigned had his initial interview which in it of itself was a violation according to the procedures and methods outlined in the supposed authoritative manual. The 2017 manual states that the initial "Interview will be conducted by an Interview Team, which shall include the Accused's CHBC, his or her Company Commander (CC), his or her CHBC, and a member of the Regimental Honor Board Staff" (Reference Honor Manual 2017 Chapter 3 Section 302A paragraph 2). The interview consisted of the regimental honor board chairman, Jake Erickson, the investigations officer Wayne Witherow, and the honor board vice chairman Alex Thompson. The honor board completely ignored the clearly defined members that are supposed to be present and a part of the interview. Throughout the rest of the process there were several other clear and egregious violations of the honor manual which include the entire process being shortened and voting sections by the honor board members removed.

3. Once the investigation process was complete, the honor board members moved to preparing to have an honor hearing. The hearing itself is completely different than what is stated in the honor manual the undersigned had access to, though the undersigned was told he needed to sign a form agreeing to the format. The undersigned signed this form because he felt he had no choice but to do so due to the nature of the academy's honor advisor actions and the honor board's actions towards him. He had been told several times that it appears that he was trying to delay the process and that it was upsetting those involved and would only lead to a worse outcome for the undersigned. This notion is illogical because as a senior, the undersigned should want to get to the results of the process as quick as possible so as to continue his schooling and have a clear future ahead of him regardless of the outcome. Either way, the new process of a hearing versus a trial

was put in place and set in motion. The undersigned was not given any clear directives or information detailing the process as it is part of a new manual that has not been released. The only information that was available was a list of changes to the honor process set out as amendments in a commandant's notice (Reference Item E). This was sent out to the regiment of midshipman through company honor board chairman on January 29th after the conclusion of the investigation process and therefore irrelevant according to the Regimental Honor Board Chairman's own directives. The amendments are separate from the manual and are an incredibly confusing dispersal method because it requires a person to go back and forth between the new amendments and the old honor manual to line up where the sections go and what parts in the manual are still relevant and what are not. Due to this confusion, the undersigned had his advisor contact CDR Keane regarding several details prior to his now scheduled hearing date. The biggest of these issues surrounds what was formerly referred to as the jury in the old trial system. In the old system the person accused of an honor violation was given a list of the jury members beforehand and had an opportunity to bring up any issues that could arise as matters of conflict of interest. The final decision was up to the Academy's honor advisor, but the knowledge of the voting members beforehand was always a right of the accused in order to bring to light any potential issues. Furthermore, the old jury members were made up of the accused person's class year with a number of mandatory exclusions for people on the accused midshipman's sports team, academic section, company, and clubs. While there is no clear mandate that this would continue with the new system due to the lack of information, logic follows that it should. LCDR Curran spoke with the Academy's advisor CDR Keane and was told that the undersigned would not be given an opportunity to view the members of his hearing beforehand but that the exclusions would remain in place and specifically that no member of my company in the regiment would be a voting member of his hearing. While frustrated with this information, the undersigned had no choice but to move forward at the very least believing that the process would be followed with no member of the undersigned's company as stated.

4. The hearing took place and one of the five people involved in the hearing that was asking the undersigned questions regarding the alleged honor violation was a midshipman Liam

Connors that has been in his company for the last three years. Upon taking a recess for the members to vote, the undersigned brought this matter up to his advisor who reentered the room and reaffirmed that no member of the undersigned's company would be a voting member. While taking this word as true, but the undersigned was skeptical because based upon his assessment the only other person in the hearing that could be a voting member was a member of the class below himdsfr and not a company honor board chairman. This would violate the new regulations as set out by the honor manual amendments which further lead to the undersigned believing one of the voting members was in violation of the previously set out rules. Following the trial and a result voted on by the members of the hearing of in violation, the undersigned worked with his advisor to submit an appeal regarding all the aforementioned issues and violations (See Item F). During this work, LCDR Curran contacted CDR who was present in the hearing to finally confirm whether the member of my company was a voting member or not and CDR Keane admitted that Midshipman Liam Connors was a voting member. CDR Keane's reply stated that he was not a member of the undersigned's company because he was a regimental officer and not officially a member of the same company. The issue with this is that midshipman Liam Connors lives in the undersigned's company in fact on the same floor as him just down the hall. The Undersigned has daily contact with him due to the proximity to of the living arrangement. Furthermore, the undersigned has had negative encounters with him in the past and several other voting members that he would have brought up as an issue had the undersigned been given a chance prior to the hearing. CDR Keane stated in his denial of the undersigned's appeal that he was read a list of his rights at the beginning of the hearing and one of those rights was to argue against any person as one of the voting members. CDR Keane states that this was the undersigned's chance to argue for or against any member. Therefore, by having not stood up in the beginning of the hearing to ascertain his guilt or innocence, the undersigned's entire complaint regarding the midshipman in his company is invalid. The issue with this is that as previously stated CDR Keane informed LCDR Curran that the undersigned was not allowed to access to the voting member's names or to provide reasoning as to why I had an issue with a voting member. Secondarily, at no point was the undersigned apprised of the names of the voting members and was left to surmise based upon who was in the

room and a part of the hearing with more than 20 people present and only 5 members voting. My appeal was denied by CDR Keane (See Item G) and the result sent to the superintendent with the recommendations of the honor board chairman and school honor advisor as to the proper result for my future.

5. The honor manual states that members of the honor board are released to speak regarding the case once the superintendent has made a final decision. Upon learning that he was being disenrolled, the undersigned spoke with a classmate of his who was one of the voting members of the hearing. He informed the undersigned that from his assessment, several of the other members had made up their minds regarding their decision that the undersigned was in violation of the honor code before the hearing had begun and did not care what the undersigned had to say in defense of himself. Furthermore, he believes that the school's honor advisor had a good deal to do with influencing this because CDR Keane stated repeatedly to the voting members that the undersigned has a colored past with regards to the regiment and earning demerits along with prior honor board case. The clear issue with this arises from the now enforceable honor manual amendments which states that the process of collecting character statements, academic records, and conduct records will be cancelled "additional records are irrelevant and will not be considered when determining the occurrence of a violation" (Reference Item E). This midshipman shared that the honor advisor mentioned my past issues at the academy the day before the trial to all members of the hearing as they viewed relevant evidence in the undersigned's case in his office as well as twice in the hearing room prior to the undersigned's entrance to the hearing room. Additionally, CDR Keane each time instructed that that none of the members should let that information cloud their judgement. The above midshipman is now fearful for his future as he is now being accused of an honor violation for having not recused himself from my hearing due to impartiality on the part of being an acquaintance of mine. The CDR Keane called this midshipman into his office and told him that he was informed that this midshipman and I are friends and therefore it is impossible for him to have been an impartial member so he must have lied. The next day the honor board chairman, Jake Erickson told this midshipman that the honor advisor is intent on proving wrongdoing and in CDR Keane's own words, "wants to burn him for this". The same

argument that he is making against that midshipman could be made in reverse by me against several of the other members with the exact same level of evidence and yet when that argument was made, he dismissed it as ridiculous until he discovered a scenario where he believes that the end result of finding the undersigned in violation could have been in doubt. This demonstrates a clear desire to lead the honor board in manner where CDR Keane is the judge, Jury, and executioner.

6. Furthermore, in hindsight following the hearing and final decision by the superintendent, there appears to be a clear desire to find the undersigned guilty of something, anything in order to ensure he is disenrolled from the Academy. The Company Officer and direct commanding officer for the Undersigned, Lieutenant (LT) James Cameron, not only inserted himself into the investigation against the undersigned during the process multiple times; but has actively found ways to use his power over the undersigned to try and put him in jeopardy of disenrollment. For example, during winter leave LT Cameron was performing his duties as Company Officer to perform "health and wellness" checks in each room within his company which includes looking in personal spaces for any potential contraband midshipmen may have in their rooms. While inspecting the undersigned's room, LT Cameron found a few rubber banded groups of one dollar bills in a personal drawer of the undersigned. Instead of moving on and continuing his inspection as this discovery violated no rule or regulation nor was it a health concern, LT Cameron went to the effort to stand on the undersigned's desk chair and take a picture of the money in a drawer on the raised bunk bed frame. LT Cameron characterized the discovery as "suspicious" and thus felt the need to submit the discovery to CDR Keane for evidence to be used in the case against the undersigned. CDR Keane informed the undersigned when showing him the evidence, that both he and LT Cameron are aware that it is an irrelevant piece of evidence as pertaining to the case against the undersigned and yet it was still a matter both felt important enough to include. Moreover, there was video footage included in evidence regarding the alleged case of an honor violation that LT Cameron initiated contact with the undersigned in order be the person to present the evidence to the undersigned even though LT Cameron does not have any connection to the honor board nor is he supposed to be involved in the investigation process unless

asked for an interview by the investigation team. In fact, through the process of trying to track down the undersigned to present evidence as a part of the investigation, LT Cameron ended up coming after the undersigned for perceived infractions when becoming frustrated that the undersigned was not cooperating. LT Cameron contacted the undersigned and instructed him to report to his office to be presented the evidence. The undersigned knew this was an improper part and violation of the investigation office and so refrained from replying or complying until he was able to speak with his advisor regarding how to proceed. Due to this, LT Cameron went searching for the undersigned the next morning during morning formation and could not find him because he was told that he was on watch. LT Cameron stormed to the undersigned's watch post and found that he had relieved the watch early in order to have breakfast as the usually provided breakfast had been eaten by an earlier watch stander. This is a common practice in this scenario as watches secure each morning prior to classes beginning. LT Cameron took this opportunity to input the undersigned into the conduct system for several different offenses. LT Cameron is aware that senior year allows a small number of demerits before a midshipman is sent to a performance review board that can be used to recommend disenrollment to the superintendent. Nonetheless, without even speaking with the undersigned reported him for several offenses that carried enough potential demerits to put the undersigned above the cap. The undersigned was exonerated of all the offenses charged by LT Cameron at a mast hearing a few weeks later proving that the report was unnecessary and based out of anger and an intent to harm the undersigned's status at the academy. Additionally, LT Cameron was aware that the undersigned had been officially disenrolled by the Superintendent and was appealing the decision prior to spring break leave period. Nevertheless, upon returning home, the undersigned received notice that he was being reported and charged with an Absent without leave (AWOL) offense due to his liberty form having an incorrect date on it. AWOL is on the biggest tier of offenses where an investigation takes place to determine the extent of an offense and is only used in the most severe cases. First off, any reasonable person would view the situation as a simple typing error and contact the individual to confirm the correct information and ensure the safety of the midshipmen as is a Company Officer's duty. Secondarily, if the offense is to be reported it truly falls under the category of improper liberty procedures which

carries with it a much lighter possible punishment for minor infractions which is most definitely the case with this situation. Instead LT Cameron took a minor situation and turned it into the most severe possible infraction that he was able to within his power in essence coming after the undersigned seeking demerits, restriction and in the undersigned's case a potential death sentence with regards to his status at the academy. This string of actions by the undersigned's commanding officer provide a clear trail pointing to a desire to have the undersigned removed from the academy by any means necessary. LT Cameron was doing everything in his power to hinder the undersigned's ability to remain at the academy. The only logical conclusion is that LT Cameron was working to help create a fallback plan to ensure the undersigned is prevented from graduating from the United States Merchant Marine Academy one way or another.

7. The above information details a pattern of misinformation, incompetence and abuse of power. The clear violations included below within the process set out by the academy itself used to determine the fate of a person's life is egregious and disconcerting. Not to mention what appears to be a culture where the advisor feels the need to use all available resources and methods to disenroll students who he believes to be guilty of an honor violation. Including a commanding officer whose actions support a vehement desire to remove the undersigned from the Academy no matter what. Therefore, the undersigned is seeking relief of his imposed sanctions due to the clearly maligned process by which the decision was made

Very Respectfully Submitted,

*[signature]*

Midshipman Noah Cavender, 1/C

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

I, _____, counsel for_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

    monetary damages sought are in excess of $150,000, exclusive of interest and costs,

    the complaint seeks injunctive relief,

    the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?        Yes            No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?        Yes            No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?        Yes            No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:_____.

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?_____Yes_____No_____
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

    Yes                        No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

    Yes   (If yes, please explain         No

I certify the accuracy of all information provided above.

**Signature**: _____

**U.S. POSTAGE PAID**
PME 1-Day
YORKVILLE, IL
60560
APR 27, 20
AMOUNT
**$26.35**
R2304H108900-11

# UNITED STATES POSTAL SERVICE®

## PRIORITY MAIL EXPRESS®

EJ 304 068 094 US

**CUSTOMER USE ONLY**
**FROM:** (PLEASE PRINT)    PHONE ( )

NOAH CAVENDER
303 BANBURY ROAD
NORTH AURORA, IL 60542

**DELIVERY OPTIONS (Customer Use Only)**
☒ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)    PHONE ( )

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

ZIP + 4® (U.S. ADDRESSES ONLY)

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

◀ **PEEL FROM THIS CORNER**

LABEL 11-B, MARCH 2019    PSN 7690-02-000-9996

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☒ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO
PO ZIP Code: 60560
Scheduled Delivery Date (MM/DD/YY): 4/28/2020
Postage: $26.35

Date Accepted (MM/DD/YY): 4/27/2020
Scheduled Delivery Time: ☒ 10:30 AM  ☐ 3:00 PM  ☐ 12 NOON
Insurance Fee: $
COD Fee: $

Time Accepted: 1:18 ☐ AM ☒ PM
10:30 AM Delivery Fee: $
Return Receipt Fee: $
Live Animal Transportation Fee: $

Special Handling/Fragile: $
Sunday/Holiday Premium Fee: $
Total Postage & Fees: $26.35

Weight: 2 lbs  ozs  ☐ Flat Rate
Acceptance Employee Initials: DS

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY)  Time ☐ AM ☐ PM  Employee Signature
Delivery Attempt (MM/DD/YY)  Time ☐ AM ☐ PM  Employee Signature

To schedule free Package Pickup, scan the QR code.
**USPS.COM/PICKUP**

PS10001000006

EP13F Oct 2018
OD: 12 1/2 x 9 1/2

This envelope is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018; All rights reserved.

* Money Back Guarantee to U.S., select APO/FPO/DPO, and International destinations. See DMM and IMM at pe.usps.com for complete details.
† Money Back Guarantee to U.S. destinations only.    × For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.