UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
NOAH CAVENDER,

                Plaintiff,

         - against -

UNITED STATES MERCHANT MARINE
ACADEMY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2063 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

Plaintiff Noah Cavender initiated this action against the United States Merchant Marine Academy on April 29, 2020. (*See* Complaint, Dkt. 1.) Plaintiff subsequently made several calls to both the Clerk's Office and the *Pro Se* Office in the Brooklyn Courthouse of the United States District Court for the Eastern District of New York advising them that he wished to withdraw his Complaint. (*See* Order, May 8, 2020.) On May 8, 2020, the Court directed Plaintiff to, *inter alia*, file a letter indicating whether he wished to withdraw his Complaint or proceed with this matter. (*Id.*)

On May 20, 2020, Plaintiff submitted a letter to the Court indicating that he wanted to withdraw his Complaint and requesting "that the case filing and all included documentation be sealed from public record as I feel it may potentially have negative effects on my future endeavors." (Dkt. 5, at ECF[1] 1.) Currently pending before the Court is Plaintiff's request to seal this case. For the reasons contained herein, the Court denies that request.

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

**DISCUSSION**

There exists both a common law right of public access to judicial documents, which "is firmly rooted in our nation's history," and a "qualified First Amendment right of access to certain judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (citations omitted). The framework provided by the Second Circuit in *Lugosch* is designed, in part, "to vindicate the First Amendment and common-law presumptions of access without requiring members of the public to intervene—a procedure that is costly and, for a layperson, arcane." *DXC Tech. Co. v. Hewlett Packard Enter. Co.*, No. 19-CV-7954 (VEC), 2019 WL 4621938, at *2 (S.D.N.Y. Sept. 11, 2019).

**I.     Judicial Document**

Under both the common law and First Amendment standards, the first inquiry is whether the document in question is a judicial document, such that the right of public access attaches. *See, e.g.*, *Haider v. Geller & Co. LLC*, ___ F. Supp. 3d ___, 2020 WL 2046204, at *1 (S.D.N.Y. Apr. 28, 2020); *DXC Tech. Co.*, 2019 WL 4621938, at *1.

A "judicial document" is one that is "relevant to the performance of the judicial function and useful in the judicial process," *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch*, 435 F.3d at 119), and is "presumptively public so that the federal courts 'have a measure of accountability' and so that the public may 'have confidence in the administration of justice,'" *id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). In evaluating whether a document is a "judicial document," the Court considers the "'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the document would materially assist the public in understanding the issues before the court and in evaluating the fairness and integrity of the court's proceedings." *Id.* at 139–40 (quoting *Newsday LLC v. County of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013)).

A complaint is "easily" a judicial document. *See id.* at 139 ("We first consider whether a complaint is a judicial document subject to a presumption of access and easily conclude that a complaint is such a document."). Although the court will not be rendering a decision in this case, "in commencing an action and thus invoking the court's jurisdiction, the parties' substantive legal rights and duties may be affected . . . [and t]he filing of a complaint triggers other legal consequences as well." *Id.* at 140 (citations omitted). These are some of the reasons that "the modern trend in federal cases is to classify pleadings in civil litigation . . . as judicial records." *Id.* (collecting cases from other Circuit Courts of Appeal). Moreover, "[u]nder [a] First Amendment analysis, complaints have historically been publicly accessible by default and such access allows the public to 'understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern.'" *Haider*, 2020 WL 2046204, at *2 (quoting *Bernstein*, 814 F.3d at 141).

For these reasons the Court finds that the Complaint is a judicial document.[2]

## II.     Common Law Right of Access

To determine whether documents should be sealed under the common law right of access,

> the Court must: (i) determine whether the documents in question are "judicial documents"; (ii) assess the weight of the common law presumption of access to the materials; and (iii) balance competing considerations against the presumption of access. "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure."

---

[2] To the extent that Plaintiff's Letter (Dkt. 5) may be construed to include a request to seal the docket sheet in this matter, there also exists a right of access to docket sheets. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) ("[D]ocket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment.").

*Doe v. City of New York*, No. 15-CV-117 (AJN), 2019 WL 4392533, at *1 (S.D.N.Y. Sept. 13, 2019) (quoting *Lugosch*, 435 F.3d at 120) (internal citations omitted). Moreover, the Court's decision to seal judicial documents "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and [may] only [be issued] if the sealing order [is] narrowly tailored to achieve that aim." *In re N.Y. Times*, 799 F. App'x 62, 65 (2d Cir. 2020) (summary order) (internal quotation marks, citation, and alterations omitted).

As previously discussed, the first *Lugosch* factor is easily met. The second factor, "[t]he weight to be accorded" to the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (quoting *Amodeo*, 71 F.3d at 1049). "The general and deeply rooted rule is that the presumptive right of access is afforded 'strong weight' when applied to documents that play a central role in 'determining litigants' substantive rights—conduct at the heart of Article III.'" *Id.* at 60 (quoting *Amodeo*, 71 F.3d at 1049). This access is "critical as it enables the public to monitor the actions of the courts and juries to ensure 'a measure of accountability' and bolster 'confidence in the administration of justice.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1049) (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 610 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion)). The weight afforded to a complaint "is strong because the complaint is 'highly relevant to the exercise of Article III judicial power' and the complaint 'invokes the powers of the court, states the cause of action, and prays for relief.'" *Haider*, 2020 WL 2046204, at *2 (quoting *Bernstein*, 814 F.3d at 139).[3] The Court finds that the documents

---

[3] For many of the same reasons, a docket sheet carries a similar presumptive weight of public access. "The docket sheet is the public record of the existence of [a] litigation." *Next Caller Inc. v. Martire*, 368 F. Supp. 3d 663, 666 (S.D.N.Y. 2019).

that Plaintiff seeks to seal, which includes the Complaint, carry a strong presumptive weight against sealing.

The final factor requires the Court to balance competing considerations against the presumption of access. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Doe*, 2019 WL 4392533, at *1 (quoting *Lugosch*, 435 F.3d at 120). A privacy interest is "[f]oremost among the competing concerns that a court weighing disclosure must consider," and in determining its proper weight "a court should consider both the degree to which the subject matter is traditionally considered private rather than public, as well as the nature and degree of the injury to which the party resisting disclosure would be subjected were the privacy interest not protected." *Mirlis*, 952 F.3d at 61 (internal quotation marks, citation, and alteration omitted).

The only countervailing concern raised by Plaintiff is that this lawsuit "may potentially have negative effects on [his] future endeavors." (Dkt. 5, at ECF 1.) Plaintiff fails to particularize the harm he might suffer, or explain how the filings in this matter, or the fact of its initiation, could negatively affect his future endeavors. However, given the allegations contained in the complaint and the context of this litigation, the Court assumes Plaintiff is referring either to potential harm to his career and military advancement or to some form of reputational harm.

"[A] possibility of future adverse impact on employment . . . is not a 'higher value' sufficient to overcome the presumption of access to judicial documents." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 470 (S.D.N.Y. 2017) (citation omitted); *see also Alexandria Real Estate Equities, Inc. v. Fair*, No. 11-CV-3694 (LTS), 2011 WL 6015646, at *3 (S.D.N.Y. Nov. 30, 2011) (holding that the possibility of a future adverse impact on plaintiff's employment is not sufficient

to outweigh the presumption of access); *General Media, Inc. v. Shooker*, No. 97-CV-510 (DAB), 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998) ("The public interest in access to the courts, and the court's own interest in allowing such access, far outweigh Defendant's generalized concern of negative reaction on his business dealings from the instant lawsuit."). Reputational harm is also not a "higher value" sufficient to overcome the presumption of access. *See Doe*, 2019 WL 4392533, at *2 ("Neither the possibility of some harm to Defendant's [] reputation nor to his employment prospects is a 'higher value' sufficient to overcome the strong presumption in favor of access." (citing *Lugosch*, 435 F.3d at 125)).

For these reasons, the Court finds that Plaintiff's asserted interests do not rise to the level of higher values that would allow it to seal the Complaint, its associated filings, or the docket sheet in this matter.

### III. First Amendment Considerations

"Circuit precedent further establishes that the public's presumptive right of access to judicial records is also independently secured by the First Amendment." *Mirlis*, 952 F.3d at 58 n.5 (citation omitted). The Second Circuit has

> articulated two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents. The first approach considers experience and logic: that is, whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question. The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.

*Bernstein*, 814 F.3d at 141 (internal quotation marks and citations omitted).

The first approach—a consideration of experience and logic—is the one most relevant when assessing a complaint. *Id*. That approach supports access because "[c]omplaints have

6

historically been publicly accessible by default, even when they contain arguably sensitive information." *Id.*

Moreover,

> [p]ublic access to complaints allows the public to understand the activity of the federal courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern. Conversely, a sealed complaint leaves the public unaware that a claim has been leveled and that state power has been invoked—and public resources spent—in an effort to resolve the dispute. These considerations indicate that public access to the complaint and other pleadings has a significant positive role[] in the functioning of the judicial process.

*Id.* (internal quotation marks and citation omitted). The Court finds that the public has a First Amendment right of access to the complaint, docket sheet, and all other filings in this matter.

## CONCLUSION

For the reasons contained herein, Plaintiff's request to seal the case filing and associated documentation in this matter from the public record (Dkt. 5) is denied. In light of Plaintiff's letter asking that this case be terminated (*id.*), the Court finds that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. 2) is moot and terminates the motion accordingly. This case is also terminated. *See* Fed. R. Civ. P. 41(a)(1)(A)(i) (permitting plaintiff to dismiss an action without a court order by filing a notice of dismissal before the opposing party serves an answer).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 18, 2020
       Brooklyn, New York

7